UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS RAYMO,

                Plaintiff,

    v.

CIVITAS MEDIA LLC, et al.,

                Defendant.

CIVIL ACTION NO. 3:19-CV-01798

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

Plaintiff Dennis Raymo commenced this action on October 14, 2019, asserting claims for violations of the Americans with Disabilities Act (ADA) (Count I), 42 U.S.C. §§ 12101-12213, and the Pennsylvania Human Relations Act (PHRA) (Count II), 43 Pa.C.S.A. §§ 951-963, against defendant Citivas Media LLC. (Doc. 1). Presently before the Court is Raymo's motion for leave to amend his complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to assert two additional counts based on alleged violations of the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654: interference with his rights under the FMLA (Count III), and retaliation under the FMLA (Count IV). (Doc. 29; Doc. 34).[1] The parties submitted briefs in support of their respective positions (Doc. 31; Doc. 35), and the motion to amended is now ripe for disposition.

For the following reasons, Raymo's motion for leave to amend his complaint (Doc. 29) is **GRANTED IN PART and DENIED IN PART**. Specifically, Raymo will be granted leave to amend his complaint to add Count IV (FMLA retaliation) as pleaded in the proposed

---

[1] Raymo was directed to submit propose amended complaint, which he did on May 11, 2020. (Doc. 32).

amended complaint.

I.    BACKGROUND AND PROCEDURAL HISTORY

In his original complaint, Raymo alleges that from June 2016 to October 2018, he was employed by The Times Leader, a corporation owned and operated by Civitas, as a digital editor. (Doc. 1, at 2, 4). He was promoted to a sports editor position in 2017 and by 2018 was earning a yearly salary of $51,500. (Doc. 1, at 4). Raymo further alleges that he suffers from 90% vision loss in his left eye due to glaucoma and has limited depth perception. (Doc. 1, at 4).

In June 2018, Raymo requested – and Amy Kosch of The Times Leader's human resources department approved – FMLA short-term disability. (Doc. 1, at 4).  At that time, Kosch noted that "on October 1, 2018, [Raymo] would need to pay The Times Leader/Civitas Media for medical benefits since there would be no employee funds at that time to cover the $243.33 monthly premium that was normally taken out of his bi-weekly paycheck." (Doc. 1, at 4). Kosch did not follow up on October 1, 2018, as she promised to do. (Doc. 1, at 4). Raymo underwent surgery in August 2018 to repair three discs in his neck. (Doc. 1, at 5). August 3rd was Raymo's last day of work, he was hospitalized until August 8th, and he had numerous follow-up appointments following the surgery. (Doc. 1, at 5).

In late September, Raymo informed Kosch that he would be returning to work on Monday, October 8, 2018, and asked "how he could turn in the surgeon's return-to-work approval letter." (Doc. 1, at 5). Kosch indicated that the letter could not be submitted via fax and that Raymo must instead send the letter by USPS regular mail. (Doc. 1, at 5). Because Kosch did not work Mondays, Kosch and Raymo agreed that Raymo would recommence working on October 9th. (Doc. 1, at 5).

On the day he was slated to begin working, Raymo called Kosch to confirm he was

approved to return to work. (Doc. 1, at 5). Although Kosch responded that she did not received Raymo's doctor's letter because it "went to a different department," Raymo nonetheless returned to work at 4 p.m. and worked until 12:30 a.m. (Doc. 1, at 5). The very next day, Joe Soprano, The Times Leader's executive editor, informed Raymo that "his position had been 'eliminated' and he was being terminated." (Doc. 1, at 6). The Times Leader offered Raymo a severance package including a paycheck for a two-week pay period and health insurance coverage until October 31st. (Doc. 1, at 6). Raymo later learned that The Times Leader had offered a larger severance package to another editor who had been terminated two months earlier and who had 20 years' less experience than Raymo. (Doc. 1, at 6).

Based on the allegations in his original complaint, Raymo asserts, in Count I, that Civitas discriminated against him on the basis of a disability or perceived disability, that Civitas conduct constituted an unlawful hostile work environment based on such disability, and that Civitas unlawfully retaliated against him for engaging in protected activity, all in violation of the ADA. (Doc. 1, at 6-7). In Count II, Raymo asserts that the same allegations give rise to violations of the PHRA. (Doc 1, at 7).

After filing his complaint, Raymo moved for default judgment for Civitas's failure to answer the complaint, and Civitas moved to strike that motion. (Doc. 8; Doc. 10). On April 8, 2020, District Judge Jennifer P. Wilson issued an Order denying the motion for default and granting the motion to strike, while at the same time referring the case to Magistrate Judge Martin C. Carlson for the purpose of either conducting a settlement conference or discussing whether the parties will consent to Magistrate Judge jurisdiction. (Doc. 21; Doc. 22). The parties thereafter consented to Magistrate Judge jurisdiction, and this action was assigned to the undersigned to adjudicate all pretrial and trial proceedings. (Doc. 27).

## II.    LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure governs motions to amend a complaint.

Rule 15 provides for three ways by which a plaintiff may potentially amend a complaint: (1) as

a matter of course; (2) with the opposing party's written consent; or (3) by leave of court. Fed.

R. Civ. P. 15(a)(1)-(2).  Here, Raymo seeks to amend his complaint under Rule 15(a)(2). Under

Rule 15(a)(1), "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P.

15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or

declared reason . . . the leave sought should, as the rules require, be 'freely given.'"). However,

even under this liberal standard, a motion for leave to amend may be denied when justified.

Permissible justifications for denial of leave to amend include: (1) undue delay; (2) bad faith or

dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct

deficiencies with previous amendments; and (5) futility of the amendment. *Riley v. Taylor*, 62

F.3d 86, 90 (3d Cir. 1995).

## III.    DISCUSSION

Raymo seeks permission to amend his complaint to add Counts III and IV asserting

violations of the FMLA. (Doc. 29). In Count III, Raymo alleges that he "was an eligible

employee under the FMLA," Civitas "is an eligible employer under the FMLA," and that he

has sustained injuries as a result of FMLA violations.[2] (Doc. 32, at 7). In Count IV, Raymo

alleges that he was granted FMLA leave, he gave sufficient notice of his intention to take

---

[2] On page 7 of his proposed amended complaint, following his allegations concerning
FMLA eligibility, Raymo alleges, "[a]s a direct and proximate result of each defendant's
violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth
herein." (Doc. 1, at 7). This appears to be an inadvertent reference to the PHRA that was
intended to be a reference to the FMLA.

FMLA leave, and that Civitas terminated him due to his request for and receipt of FMLA leave. (Doc. 32, at 7-8). Raymo's proposed amended complaint is otherwise identical to the original. (Doc. 32; *see* Doc. 1).

Civitas argues that "[a]mendment of the [complaint] should not be permitted because Plaintiff has acted dilatorily, because the amendment would be in bad faith[,] and because the proposed amendment would be futile." (Doc. 35, at 3).

### A.   NEW LEGAL THEORIES

Initially, Civitas argues that Raymo's motion for leave to file an amended complaint is an attempt to change the theory of his case, i.e., that the amended pleading constitutes "a change of a tactics or theories." (Doc. 35, at 2-3). Civitas submits, in relevant part:

> A review of the original Complaint reveals that only the most generous reading of it would find that it sufficiently alleges an ADA claim. Plaintiff asserts that his disability is glaucoma and that his employment was terminated. There is not a single fact alleged creating a nexus between those two facts that can support the contention that the elimination of Plaintiff's position was because of his alleged glaucoma; especially given that Plaintiff had the same glaucoma when he was hired approximately two years prior to the elimination of his position and when he was promoted barely a year prior, according to Plaintiff's own Complaint. [Dkt. 1, ¶¶17, 18] Plaintiff recognizes that he has no ADA claim. He now seeks to bootstrap into a new lawsuit under the FMLA; a claim he never previously asserted.

(Doc. 35, at 3).

Standing alone, this argument is insufficient to warrant the Court's denial of Raymo's motion. The addition of new legal theories is not a *per se* basis for denying a motion for leave to amend but rather a consideration inherent in the inquiry whether amendment would unduly prejudice Civitas. *See, e.g.*, *Wainwright v. City of Sharon*, No. CV 14-1212, 2016 WL 110015, at *2 (W.D. Pa. Jan. 11, 2016) ("'As to prejudice, the Court of Appeals has 'considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend

against new facts or new theories.' [*Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 123 (W.D. Pa. 2010)] (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).").

Thus, because Civitas has failed to establish any significant prejudice that would result from amendment, *see infra*, Civitas's new-legal-theory contention is likewise without merit. Notably, while Raymo seeks to assert FMLA claims, those claims are based on the exact same conduct alleged in the original complaint in support of the ADA and PHRA counts.

B.  BAD FAITH AND DILATORY MOTIVE

Civitas's principle argument concerning bad faith and dilatory motive stems from the protracted procedural history that ensued following the commencement of this action. Specifically, Civitas notes and argues:

> The history of this case is one of Plaintiff's continuous delay, to the prejudice of Defendants. The Complaint was filed on October 14, 2019. Thereafter, as far as the docket entries show, Plaintiff did nothing to effect service. On December 9, 2019, noting the absence of service of the Complaint, the Court ordered Plaintiff to file a status report regarding service. On December 11, 2019, Plaintiff filed an Affidavit of Service that was defective on it[s] face, evidencing a question mark by the process server as to the title of the person on whom service was made. In fact, that person had no authority to accept service on behalf of Civitas. On December 16, 2019, again noting Plaintiff's dilatory conduct, the Court entered an Order directing Plaintiff to make "an appropriate filing" within ten days or suffer dismissal. Without any further attempt to confirm effective service of the Complaint, on December 16, 2019, Plaintiff moved for entry of a default which was entered on December 17, 2019. Thereafter, Civitas informally learned of the lawsuit, engaged counsel and that counsel contacted Plaintiff's attorney. It was explained that Civitas had only become aware of the litigation, that service was not properly made, and the request made that Plaintiff remove the default so that Civitas might answer the Complaint. The parties agreed to exchange documents regarding the ineffective service. While that process was ongoing, and without warning, Plaintiff's attorney ran to the courthouse and filed a Motion for Entry of a Default Judgment. This sharp practice necessitated Civitas filing a Motion to Strike the Default and an opposition to the Motion seeking a Default Judgment. Of course, Plaintiff's conduct also necessitated the Court having to devote its time to those matters and delayed forward movement of the case.

On April 8, 2020, finding that Plaintiff had not effect[uat]ed proper service (contrary to the representation in Plaintiff's Brief in support of its current Motion), the Court denied Plaintiff's Motion for a Default Judgment and struck the Default granting Civitas sixty days to respond to the Complaint. Promptly, on April 30, 2020, Civitas filed its Answer with Affirmative Defenses.

Thereafter, it was Civitas' counsel who initiated a Rule 26(f) Conference which was held on May 5, 2020. During that conference, Plaintiff's counsel gave no indication of any desire to amend Plaintiff's Complaint. On May 6, 2020, Plaintiff's counsel sent an email to Civitas' counsel for the first time announcing: "Further, I wish to amend the complaint to add *an* FMLA count." [emphasis supplied] Again, contrary to the representation in Plaintiff's pending Brief, he did not inform Civitas' counsel that he wanted to add FMLA counts and did not specify that the counts he wanted to add would allege FMLA interference and retaliation. Finally, the Court is told that "discovery has not yet begun" [Plaintiff's Brief at p. 1] when, in fact Plaintiff has served both Interrogatories and Document Requests, and Defendant has requested dates for deposing Plaintiff."

(Doc. 35, at 1-2; *see* Doc 3 (Dec. 9, 2019 Order noting the docket failed to indicate whether Civitas had been served and directing Raymo to file a status report regarding service); Doc. 5 (Dec. 16, 2019 Order noting lack of activity in the action since October 2019 and directing Raymo to prosecute this litigation or face dismissal for failure to prosecute)).

Having thoroughly reviewed the parties' submissions and Raymo's proposed amended complaint, the Court finds no basis for concluding that Raymo filed his motion for leave to amend in bad faith or for the purpose of delaying these proceedings.

### 1. Bad Faith

The "scope of the . . . [Rule 15 bad faith] inquiry is [] limited to whether the motion to amend itself is being made in bad faith, not whether . . . conduct outside the motion to amend amounts to bad faith." *Trueposition, Inc. v. Allen Telecom, Inc.*, No. CIV.A.01-823 GMS, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) (citing *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir. 1987)). Thus, the question of bad faith requires the Court to "focus on [Raymo'] motives for not amending [her] complaint . . . earlier[.]" *Adams*, 739 F.2d at 868.

On this record, "[n]othing [Civitas] has presented suggests willful or deliberate conduct,

the elements necessary for bad faith, on the part of [Raymo] in bringing the motion. Clearly, [Civitas] disagrees with the merits of [Raymo's] allegations, but that is not enough to show bad faith." *See, e.g.*, *Roquette Freres v. SPI Pharma, Inc.*, No. C.A. 06-540 GMS, 2009 WL 1444835, at *5 (D. Del. May 21, 2009). To "deny [Raymo's] amendment, and thus preclude [consideration of] the merits, on the grounds of undue delay and bad faith alone, this [C]ourt would need the very clearest evidence of abuse by [Raymo] . . . ." *See Penn Galvanizing Co.*, 65 F.R.D. at 82. Civitas has failed to establish such clear evidence here. This is particularly true given the scope of a bad faith/dilatory motive inquiry, which is narrowly focused on Raymo's conduct in connection with the motion for leave to amend. Aside from Raymo's apparently dilatory conduct prior to filing the instant motion, Civitas has not pointed to any clear evidence of bad faith or improper motive to delay. For example, Raymo's counsel's reference to filing "*an FMLA count*" does not clearly evidence bad faith merely because counsel's proposed amended complaint contains two FMLA counts.

## 2. Undue Delay

The "question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273. While "delay alone is an insufficient ground to deny leave to amend, . . . 'at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party.'" *Cureton*, 252 F.3d at 273 (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Though there may have been delays caused by Raymo due to his failures to promptly litigate this case, Raymo moved for leave to amend one week after Civitas filed its answer and at the very beginning of discovery. The delays in this case may be lamentable, but it cannot be said that the delays were so long as to become undue or prejudicial. Though Civitas

correctly observes that Raymo offers no reason as to why he did not include the FMLA counts

in the original complaint, denial of Raymo's motion is not warranted here because Civitas has

not shown that the delay itself was undue or unduly prejudicial. *See, e.g.*, *Schmulovich v. 1161 Rt.*

*9 LLC*, No. 07-CV-00597, 2007 WL 9789632, at *1 (D.N.J. Sept. 28, 2007) (rejecting contention

that amendment should not be allowed where no reasons were provided to explain the delay in

raising claims where, *inter alia*, there was no prejudice and discovery was still ongoing, and

given the liberal standard under Rule 15).

C.   UNDUE PREJUDICE

Civitas contends that Raymo's delay in asserting the FMLA claims will, if the Court

permits amendment, result in undue prejudice. Prejudice "to the non-moving party is the

touchstone for the denial of an amendment." *Arthur*, 434 F.3d at 204 (internal quotation

marks). The prejudice inquiry "focuses on hardship to the defendant if the amendment were

permitted, specifically, whether amendment 'would result in additional discovery, cost, and

preparation to defend against new facts or new theories.'" *Se. Pennsylvania Transportation Auth.*

*v. Orrstown Fin. Servs.*, Inc., No. 1:12-CV-00993, 2020 WL 758834, at *6 (M.D. Pa. Feb. 14,

2020) (quoting *Cureton*, 252 F.3d at 273). To "demonstrate prejudice, the non-moving party

must do more than merely claim prejudice; it must show that it [would be] unfairly

disadvantaged or deprived of the opportunity to present facts or evidence." *Orrstown Fin. Servs.*,

2020 WL 758834, at *6 (internal quotation marks omitted) (brackets in original) (quoting *Bechtel*

*v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Heyl & Patterson Int'l v. F.D. Rich Housing*,

663 F.2d 419, 426 (3d Cir. 1981)))

Civitas submits the following prejudice-based argument:

In the intervening time, the assets of The Times Leader have been sold to a third
party. Both individuals with relevant information and relevant files necessary to

enable Defendant to establish that Plaintiff's position was eliminated solely for economic reasons and not due to any disability or exercise of his FMLA rights are no longer available to Defendant. It is possible that the new owner of those assets has not kept those files. Defendant's attempts to locate them so far have come to naught.

(Doc. 35, at 3-4).

While this reason does lend support for Civitas's contentions, discovery in this action has just begun and Civitas not asserted that it will be unable to procure discovery to use in its defense of this action, only that "[i]t is *possible* that the new owner of those assets has not kept those files." (Doc. 35, at 4 (emphasis added)). In other words, while it appears Civitas has established that it may be prejudiced given that The Times Leader has been sold to a third party, it has not clearly established undue prejudice. Notably, Civitas asserts that its "attempts to locate [files regarding Raymo's termination] so far have come to naught," suggesting that Civitas had already tried to obtain this information before Raymo filed the instant motion. Civitas's assertion of having already attempted to obtain this information belies its contention that it was Raymo's delay in asserting the FMLA claims that *caused* the potential loss of any discovery. Additionally, Civitas does not argue that amendment will result in additional costs or undue additional preparation. *Cf. Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) (affirming the denial of a motion for leave to amend where amendment would "requir[e] extensive discovery").

Civitas also notes that Raymo has served interrogatories and documents demands and that deposition dates have been scheduled, but Civitas does not contend that discovery has otherwise been exchanged or that depositions have been held. Discovery is, by all accounts, still in its infancy in this action.

D.  FUTILITY

Finally, Civitas submits that given the allegations in the amended complaint, any amendment would be futile because Raymo has failed to state a claim for relief under the FMLA. Amendment "is futile when the amended claims would not survive a motion to dismiss . . . ." *Developers Sur. & Indem. Co. v. Mathias*, No. 1:12-CV-2216, 2014 WL 4916135, at *1 (M.D. Pa. Sept. 30, 2014). Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted" and is reviewed "under the same standard of legal sufficiency as applies under [Rule 12(b)(6) of the Federal Rules of Civil Procedure]." *Kenny v. United States*, 489 F. App'x 628, 633 (3d Cir. 2012) (internal quotation marks omitted). The Court must therefore "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

Generally, to plead a sufficient FMLA claim, a plaintiff must allege "(1) invocation of a right to FMLA leave, (2) an adverse employment action, and (3) a ca[usal] link between the two." *Dreibelbis v. Cty. of Berks*, No. 5:19-CV-4946, 2020 WL 605884, at *12 (E.D. Pa. Feb. 7, 2020). "An employer covered by FMLA is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 C.F.R. § 825.104.

Preliminarily, as to both proposed Counts III and IV, Civitas contends that Raymo has failed to establish that Civitas is an "eligible employer" under the FMLA because, at best, he incorporated allegations concerning his ADA claim, i.e., that Civitas employs *15 or more*

11

*employees*, not 50 or more as required under the FMLA. (Doc. 35, at 4). However, drawing all reasonable inferences in Raymo's favor, and given that he has alleged that he applied and was approved for FMLA leave and that Civitas is an eligible employer, he has alleged enough facts to plead a claim for relief at this juncture as to the eligibility element. *See, e.g., Merical v. Valor Healthcare, Inc.*, No. CIV.A. 12-1681, 2013 WL 5332145, at *2 (W.D. Pa. Sept. 23, 2013) ("Discovery will ultimately reveal whether Valor employed the necessary number of individuals to render Plaintiff an 'eligible employee' for benefits under the FMLA. If after discovery, it is determined that Plaintiff was indeed exempt from FMLA benefits, then the Court will reconsider Valor's arguments upon a motion for summary judgment. However, at this time, the Court declines to dissolve Plaintiff's FMLA claim absent a more fully developed record.").

However, because Raymo has alleged that he was approved for leave and took advantage of the approved leave, he has failed to establish a claim for interference with his FMLA rights, *see infra*. In contrast, Raymo has sufficiently pleaded a retaliation claim under the FMLA such that amendment would not be futile as to Count IV.

### 1.  Interference under the FMLA (Count III)

To "assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir.2007). Here, Raymo's own allegations are that Civitas approved his FMLA leave request, Raymo took the leave he was granted, and then he returned to work. There is no reasonable view of these allegations that would support a claim of interference under the FMLA. Indeed, as Civitas notes, the opposite appears to be is true.

### 2. Retaliation under the FMLA (Count IV)

To prevail on a "retaliation claim under the FMLA, the plaintiff must prove that "(1) []he invoked her right to FMLA-qualifying leave, (2) []he suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). As to this count, it cannot be said that amendment to permit adding a claim of FMLA retaliation would be futile, as Raymo has pleaded allegations in support of each of the elements relating thereto.

In partially granting Raymo's motion, the Court has observed the many overlapping aspects of the counts already pleaded in her original complaint with the FMLA count and further notes that Civitas has failed to establish undue prejudice, which "is the touchstone for the denial of an amendment." *Stolinski v. Pennypacker*, No. CV 07-3174 (JBS/AMD), 2011 WL 13238545, at *6 (D.N.J. June 23, 2011) (internal quotation marks omitted), *aff'd*, No. CIV. 07-3174 JBS, 2011 WL 3608685 (D.N.J. Aug. 15, 2011). The Court is also mindful that the "guiding principle which informs the exercise of the Court's discretion in managing its docket is 'to make pleadings a means to achieve an orderly and fair administration of justice.'" *Milhouse v. Suzanne Heath*, No. 1:15-CV-01400, 2016 WL 3269091, at *3 (M.D. Pa. June 15, 2016) (quoting *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964)).

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ordered that Raymo's motion for leave to amend (Doc. 29) is **GRANTED IN PART and DENIED IN PART** to the extent indicated below:

1. Raymo is granted leave to file an amended complaint asserting Count IV (for retaliation under the FMLA) as pleaded in the proposed amended complaint filed under Docket No. 32.

2. Raymo shall file his amended pleading within 21 days of the date of the Court's Order issued contemporaneously with this Memorandum Opinion;

13

3.  Any amended pleading shall be filed to the same docket number as the instant action, shall be entitled "First Amended Complaint," and shall be complete in all respects. It shall be a new pleading which stands by itself as an adequate complaint under the Federal Rules of Civil Procedure, without reference to the initial complaint; and

4.  In the absence of a timely-filed amended complaint, the above-captioned action shall proceed on the original complaint.


An appropriate Order follows.


**BY THE COURT:**


**Dated: July 15, 2020**                 *s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**