# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS RAYMO,

      Plaintiff,

      v.

CIVITAS MEDIA LLC,

      Defendant.

CIVIL ACTION NO. 3:19-CV-01798

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Dennis Raymo ("Raymo") brings the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Civitas Media LLC ("Defendant"). (Doc. 1; Doc. 44). In his amended complaint (the "Complaint"), Raymo claims Defendant unlawfully discriminated and retaliated against him in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), and unlawfullu retaliated against him for taking leave under the Family and Medical Leave Act ("FMLA").[1] (Doc. 44, at 1, 6-7). Raymo contends that he suffers from glaucoma and had to take leave to have an unrelated neck surgery performed. (Doc. 44, at 3-4). Raymo states that once he returned from the leave that he was granted to have his neck surgery performed, he was fired by Defendant. (Doc. 44, at 5-8). Raymo alleges that Defendant discriminated against him based on his glaucoma and his neck surgery and retaliated against him due to his taking of leave to have neck surgery performed. (Doc. 44, at 3-8).

---

[1] At oral argument on October 5, 2021, Raymo's counsel withdrew his hostile workplace environment claim. (Doc. 108). As such, Raymo's hostile workplace environment claim is dismissed. (Doc. 44, at 6).

Pending before the Court is a motion for summary judgment and a motion for sanctions filed by Defendant. (Doc. 86; Doc. 90). Defendant asserts that Raymo cannot establish that he "was discriminated against based on his glaucoma or any other disability" or that his termination was due to a disability. (Doc. 89, at 4, 7). As such, Defendant contends that summary judgment should be granted in its favor as to Raymo's ADA and PHRA claims. (Doc. 89, at 16-17). Additionally, Defendant argues that Raymo cannot establish an FMLA retaliation claim because the decision to terminate his position was made before Raymo requested FMLA leave and because his termination was due to the financial condition of the newspaper at The Times Leader. (Doc. 89, at 17, 22). Raymo contends that the timing of his termination coupled with additional circumstances suggest that his termination was "unduly suggestive of retaliation." (Doc. 95-1, at 11-16). Additionally, Raymo avers that Defendant may not rely upon an affidavit by its Human Resources ("HR") manager in support of its motion, as the same is inadmissible hearsay. (Doc. 95-1, at 16-18).

For the reasons stated herein, the Court will GRANT Defendant's motion for summary judgment and DENY Defendant's motion for sanctions. (Doc. 86; Doc. 90).

## I. BACKGROUND AND PROCEDURAL HISTORY

This factual background is taken from the parties' statements and counterstatements of material facts and accompanying exhibits. (Doc. 88; Doc. 86-3). Pursuant to Local Rule 56.1, Raymo has provided his response to Defendant's statement of facts and has provided accompanying exhibits. (Doc. 95; Doc. 95-2). Where Raymo disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the

facts have been taken in the light most favorable to Raymo as the non-moving party, with all reasonable inferences drawn in his favor.

The Times Leader is a regional newspaper owned and operated by Civitas. (Doc. 88, ¶¶ 1,2). Raymo was first employed by The Times Leader as a Digital Editor on June 6, 2016, and promoted to Sports Editor in August 2017. (Doc. 88, ¶¶ 3, 4). Raymo has glaucoma, which qualifies as a disability under the Americans with Disabilities Act of 1990 ("ADA"). (Doc. 88, ¶ 5). Raymo exhausted his federal and state administrative remedies prior to filing this lawsuit. (Doc. 88, ¶ 6). Although Raymo had not expressly told anyone  that he had glaucoma at the time he was hired or promoted, the record reflects that "pretty much everyone in the newsroom knew that [he] had a visual impairment." (Doc. 86-3, at 115-116, 268). Raymo's immediate supervisor, Timothy Farkas ("Farkas"), indicated that he "was aware that [Raymo] was visually impaired." (Doc. 95-2, at 416).

In 2018, Raymo requested unpaid FMLA and paid short-term disability leave in order to undergo surgery to repair three discs in his neck. (Doc. 88, ¶ 9; Doc. 95-2, at 421; Doc. 95, ¶ 9). Raymo submits that his only disability is his vision issue caused by his glaucoma. (Doc. 88, ¶ 10). The Complaint does not allege that Raymo has a disability related to his neck.[2] (Doc. 88, ¶ 10). On June 20, 2018, Raymo's request for FMLA leave was approved. (Doc. 88, ¶ 11; Doc. 44, at 4; Doc. 95, ¶ 11).

Prior to Raymo requesting FMLA leave, due to financial difficulties, the Times Leader eliminated a number of positions and terminate the employment of the incumbents in those

---

[2] Raymo contends that he "specifically references the surgery required to repair three discs in his neck" in his Complaint. (Doc. 95, at ¶ 10).

positions, including the position held by Raymo.[3] (Doc. 88, ¶¶ 12-13). The Times Leader had not informed Raymo that his position was to be eliminated and his employment with The Times Leader terminated before Raymo requested FMLA leave.[4] (Doc. 88, ¶ 14). After Raymo requested FMLA leave, The Times Leader became concerned that if it terminated Raymo's employment it would appear that his employment had been terminated *because* he had requested FMLA leave when that was not the case.[5] (Doc. 88, ¶ 15). Accordingly, before implementing its decision to eliminate Raymo's position and terminate his employment, the paper consulted with an employment law lawyer.[6] (Doc. 88, ¶ 16). After receiving advice from

---

[3] Raymo denies this assertion and argues that "Defendant provides no evidence that financial difficulties were common to Print Newspapers or that they specifically afflicted the Times Leader or that they were common knowledge[.] Amy Kosch has not been qualified as an expert. Neither does she have any direct or specialized knowledge supporting her opinion." (Doc. 95, ¶ 12).

[4] Raymo denies this fact but does not provide record support for the denial. (Doc. 95, ¶ 14). Where record support for opposition is lacking, facts are deemed undisputed. *See Goode v. Nash*, 241 F. App'x 868, 869 (3d Cir. 2007) ("[A]lthough the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleading, legal memoranda or oral argument.'") (internal quotations omitted).

[5] Raymo states that "[t]here is no documentation supporting [this] contention." (Doc. 95, ¶ 15 Instead, Raymo proffers that the employment lawyer "advised that [it] could terminate Mr. Raymo immediately and 'was not legally restricted in its decision to wait and implement Mr. Raymo's layoff when he returned to work after his leave of absence.'" (Doc. 95, ¶ 15; Doc. 95-2, at 414).

[6] Raymo disputes this statement however the dispute is unclear as the dates he provides in contention do not provide a reasonable inference that the Times Leader contacted the employment lawyer before it implemented its decision to terminate Raymo's employment. (Doc. 95, ¶ 16). Raymo states that the employment lawyer was contacted on or around July 10, 2018, after Raymo had requested FMLA leave. (Doc. 95, ¶ 16). The next date that Raymo provides is October 1, 2018, which falls after the date in which Civitas inquired about its options for Raymo's termination with the employment lawyer. (Doc. 95, ¶ 16). Therefore, Raymo's reasoning that the employment lawyer "[c]ould not possibly have been contacted before The Times Leader implemented its decision to eliminate Mr. Raymo's position" is

its lawyer, The Times Leader decided not to immediately implement its decision to eliminate Raymo's position and terminate his employment but to grant his request for FMLA leave so that he could have his neck surgery while still covered by group health insurance and to delay elimination of his position and termination of his employment until after he recuperated from his surgery and returned to work.[7] (Doc. 88, ¶ 17). At the same time, the paper did implement its decision to eliminate other positions and terminated the employment of the incumbents in those position while Raymo was on FMLA leave.[8] (Doc. 88, ¶ 18).

Raymo returned to work at The Times Leader on October 9, 2018. (Doc. 88, ¶ 19). Raymo's position was eliminated and his employment involuntarily terminated on October 10, 2018.[9] (Doc. 88, ¶ 20). The sole reason for the elimination of Raymo's position and his termination was the dire financial predicament of The Times Leader.[10] (Doc. 88, ¶ 21). Per Defendant, Raymo's glaucoma played no role in the decision to eliminate his position and to terminate his employment.[11] (Doc. 88, ¶ 22).

---

unsupported by the dates on the record. (Doc. 95, ¶ 16; Doc. 95-2, at 247-48; Doc. 86-3, at 449).

[7] Raymo states that Civitas does not provide support for its contention that its decision to delay his determination was for compassionate reasons. (Doc. 95, ¶ 17).

[8] Raymo denies this fact but does not provide record support for the denial. (Doc. 95, ¶ 18); *see supra*.

[9] Raymo denies this fact, in part, but does not provide record support for the denial. (Doc. 95, ¶ 20).

[10] Raymo questions Civitas's support for this fact and states that neither he nor Amy Kosch are qualified to comment on the financial situation of The Times Leader. (Doc. 95, ¶ 21).

[11] Raymo denies this fact but does not provide record support for the denial. (Doc. 95, ¶ 22); *see supra*.

Raymo admits that he has no factual reason to believe that the termination of his employment was based to any degree on him having glaucoma.[12] (Doc. 88, ¶ 23; Doc. 86-3, at 254). Raymo admits that he never was discriminated against based on his glaucoma while employed by The Times Leader.[13] (Doc. 88, ¶ 24; Doc. 86-3, at 205-07). Raymo further admits that he never requested that he be provided any accommodation for his glaucoma or any other disability.[14] (Doc. 88, ¶ 25; Doc. 86-3, at 116-18). Raymo admits that he has no reason to believe that the termination of his employment from The Times Leader was related to him having glaucoma.[15] (Doc. 88, ¶ 26; Doc. 86-3, at 262-64). Raymo admits that he has no reason to believe that the termination of his employment from The Times Leader was related to him having had surgery on his back and neck.[16] (Doc. 88, ¶ 27; Doc. 86-3, at 262-64). Raymo has provides no factual basis to support the idea that the elimination of his position at and the termination of his employment from The Times Leader was due to anything other than the financial condition of The Times Leader.[17] (Doc. 88, ¶ 28).

---

[12] Raymo states that he never admitted that he had no reason to believe that his termination of employment was not based on his having glaucoma. (Doc. 95, ¶ 24; Doc. 86-3, at 179).

[13] Raymo states that he never admitted that he was never discriminated against based on his glaucoma and that he merely stated that he did not have any facts that led him to believe he was terminated due to his having glaucoma. (Doc. 95, ¶ 24; Doc. 86-3, at 205-07).

[14] Raymo states that Farkas accommodated him. (Doc. 95, ¶ 25; Doc. 95-2, at 416).

[15] Raymo denies this fact but does not provide record support for the denial. (Doc. 95, ¶ 26); *see supra*.

[16] Raymo denies this fact but does not provide record support for the denial. (Doc. 95, ¶ 27); *see supra*.

[17] Raymo asserts that he was never asked about the financial condition of The Times Leader. (Doc. 95, ¶ 28).

Raymo's real complaints against The Times Leader are that it did not terminate his position soon enough (i.e., before he took FMLA leave) and did not give him the amount of severance he thought he deserved based on the number of years he had in journalism.[18] (Doc. 88, ¶ 29; Doc. 86-3, at 181). Raymo admits that he is not contending in this lawsuit that The Times Leader selected the date of his position elimination or termination of employment based on him having glaucoma or having taken FMLA leave. (Doc. 88, ¶ 30; Doc. 86-3, at 279). Raymo admits that he enjoyed working at The Times Leader and that any hostile nature of his workplace was not directed at him in particular and was not based on or related to his having glaucoma or having taken FMLA leave.[19] (Doc. 88, ¶ 31; Doc. 86-3, at 167). Raymo would not have filed this lawsuit if The Times Leader had offered to him the amount of severance to which he thought he was entitled.[20] (Doc. 88, ¶ 32; Doc. 86-3, at 272-73). Raymo admits that he does not know how the amount of severance offered to other employees of The Times Leader whose employment was terminated at the same time as Raymo's was calculated. (Doc. 88, ¶ 33; Doc. 86-3, at 321-22). The amount of Raymo's severance was calculated on the same basis as all other employees of The Times Leader whose positions were eliminate and employment terminated at the same time as Raymo's which was one week's severance for each year of employment with The Times Leader but capped at a

---

[18] Raymo denies that he complained that he should have been terminated earlier and states that he simply asked the question as to why he had not been. (Doc. 95, ¶ 29; Doc. 86-3, at 181). Additionally, Raymo also denies that the time of his termination and his severance award were his only complaints. (Doc. 95, ¶ 29).

[19] Raymo denies this fact, in part, but does not provide record support for the denial. (Doc. 95, ¶ 31); *see supra*.

[20] Raymo states that "he probably would not have filed a lawsuit if he had received the amount of severance he deserved." (Doc. 95, ¶ 32, at 86-3, at 272-73).

minimum of two weeks and a maximum of eight weeks' severance. (Doc. 88, ¶ 34; Doc. 86-3, at 412).

## II.   MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, Defendant asserts that the record does not establish that Raymo was discriminated against or retaliated against under the ADA or PHRA. (Doc. 89, at 4, 7). Additionally, Defendant argues that Raymo fails to establish an FMLA retaliation claim, and that his termination was due to the financial condition of the newspaper at The Times Leader. (Doc. 89, at 17, 22). Raymo contends that the timing of his termination coupled with additional circumstances suggest that his termination was "unduly suggestive of retaliation" and that the affidavit by the HR manager is inadmissible hearsay and cannot be used to demonstrate an explanation for Raymo's termination. (Doc. 95-1, at 11-18).

### A.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000).

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). "The party moving for summary judgment bears the initial burden of showing the basis for its motion . . . [and i]f the movant meets that burden, the onus then 'shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial.'" *Martinez v. Triad Controls*, Inc., 593 F. Supp. 2d 741, 749 (E.D. Pa. 2009) (citing *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir.2001)). "Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[21] *Velentzas v. U.S.*, No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 869 (3d Cir. 2007) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum,

---

[21] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

or oral argument." *Goode*, 241 F. App'x at 869 (quoting *Berckeley Inv. Grp., Ltd. V. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir.2007). Further, "[t]he mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Turco v. City of Englewood, N.J.*, 935 F.3d 155, 161 (3d Cir. 2019) (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)).

B.  ADA DISCRIMINATION AND RETALIATION

Raymo claims that The Times Leader discriminated against him due to his glaucoma and his neck surgery and retaliated against him due to his neck surgery.[22] Defendant contends that Raymo only alleges a disability regarding his vision problems caused by his glaucoma and does not allege that he has a disability related to his neck. (Doc. 88, ¶ 10). Additionally, Defendant states that Raymo admits that he never made a request for accommodation as is required to demonstrate discrimination under the ADA. (Doc. 89, at 4). Finally, Defendant argues that Raymo admits that his termination was not in relation to him having glaucoma and cannot "identify any protected activity under the ADA in which he engaged and any

---

[22] At oral argument on October 5, 2021, counsel for Raymo stated that Raymo no longer wished to pursue the claim for a hostile workplace and clarified the disabilities for which Raymo was asserting his ADA claims. (Doc. 107).

adverse employment action [was] taken . . . related to a protected ADA activity." (Doc. 89, at 7-8).

    1.  <u>Discrimination</u>

In order to establish a prima facie case of discrimination under the ADA, a "'plaintiff must show that (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential function of the job, with or without reasonable accommodations by the employer; (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) (citing *Gual v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998).

Here, the parties agree that Raymo is a disabled person within the meaning of the ADA in reference to his glaucoma, however, the parties disagree as to whether Raymo is disabled due to his neck surgery. (Doc. 88, ¶ 5; Doc. 95 ¶ 5; Doc. 89, at 13; ). As such, the Court will look at the discriminatory allegations separately.

    **a.  Glaucoma**

There is no dispute that Raymo is a disabled person within the meaning of the ADA as it pertains to his glaucoma and that he is otherwise qualified to perform the essential functions of his job as a sports editor with or without reasonable accommodations by the employer. (Doc. 88, ¶ 5; Doc. 95 ¶ 5). As such, the undisputed record establishes the first and second prongs of a claim for discrimination under the ADA due to glaucoma. However, Raymo fails to demonstrate that there is an issue of fact that he suffered an otherwise adverse employment decision as a result of discrimination. The undisputed facts in the record establish that Raymo did not seek any reasonable accommodation due to his disability. "An employer discriminates against a qualified individual when it does not make reasonable

accommodations to the known physical or mental limitations of the individual." *Turner v. Hershey Chocolate, U.S.,* 440 F.3d 604, 608 (3d Cir. 2006). Raymo states in his deposition that he never requested any accommodation from The Times Leader. (Doc. 86-3, at 122). Raymo explains that he would increase font sizes and use magnifying glasses to improve his own workstation. (Doc. 86-3, at 122). Additionally, Raymo states that he would ask Farkas to provide screens for him, but they were not "ADA functioning machines" and that Farkas "removed [him] from a nighttime Digital Editor position because he had difficulty driving at night." (Doc. 86-3, at 120, 122-125, 133). Even if one were to construe Raymo's screen accommodations as Raymo requesting those accommodations, all of the accommodations were given to Raymo. (Doc. 86-3, at 122-125). Additionally, there are no facts on the record to suggest that Raymo requested leave due to is glaucoma and was then terminated from his position due to his glaucoma. The record does not establish that Raymo suffered from an adverse employment action due to his glaucoma as he was not denied reasonable accommodations due to his disability. *See Turner,* 440 F.3d, at 608. There is no issue of material fact which would permit Raymo's claim for discrimination under the ADA as it pertains to his glaucoma to go forward. As such, Raymo's ADA claim regarding his glaucoma shall be dismissed on summary judgment.

### b.  Neck Surgery

At oral argument, counsel for Raymo contended that the procedure Raymo underwent on his neck constitutes a disability under the ADA. (Doc. 107). "The term disability means, with respect to an induvial – (A) a physical or mental impairment that substantially limits one of the major life actves of such individual; (B) a record of such an impairment; or (C) being

regarded as having such an impairment." *Hershgordon v. Pathmark Stores, Inc.*, 285 F. App'x 846, 848 (3d Cir. 2008) (citing 42 U.S.C. 12102(2)).

First, the undisputed facts in the record do not support Raymo's claim that his impairment is substantial. *Ramage v. Rescot Sys. Grp., Inc.*, 834 F. Supp. 2d 309, 318 (E.D. Pa. 2011). A substantial impairment is determined by examining "the effect that impairment has on the life of the individual." *Ramage,* 834 F. Supp. 2d at 318-19. In examining the substantial nature of the impairment, the Court looks to "(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact or the expected permanent or [long-term] impact of or resulting from the impairment." *Ramage*, 834 F. Supp. 2d at 319 (citing *Emory v. AstraZeneca Pharm., LP,* 401 F.3d 174, 180 (3d Cir. 2005). Although Raymo's neck surgery could objectively be considered severe in nature, nothing in the record establishes that his procedure is repetitive or will cause any permanent impact on his life. Raymo asserts that he underwent surgery and was able to return to work following his recovery. (Doc. 88, ¶ 19; Doc. 95, ¶ 19). As such, the record does not establish that his neck surgery resulted in substantial impairment or actual disability.

Second, the evidence before the Court does not establish a record of an impairment. *Hershgordon,* 285 F. App'x at 848. "To establish a record of impairment under Section 12102(1)(B), [Raymo] must show a 'history of, or [having] been misclassified as having, an impairment that substantially limited a major life activity.'" *Parotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 594 (E.D. Pa. 2019) (quoting *Eshelman v. Agere Sys., Inc.,* 554 F.3d 426, 437 (3d Cir. 2009)). A "relatively short-term absence from work, without any long-term impairment, is generally held to be insufficient to create a record of disability." *Eshelman*, 554 F.3d at 437. Raymo's only record of impairment for his neck surgery is the FMLA leave that

he took when he received the surgery. (Doc. 88, at ¶ 9; Doc. 95, ¶ 9). His short-term absence from work is insufficient to establish a record of impairment. *see Eshelman*, 554 F.3d at 437. Therefore, Raymo has failed to establish a disability by a record of impairment.

Third, the record does not support a finding that his neck surgery is an impairment. *Hershgordon,* 285 F. App'x at 848. "[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Hershgordon,* 285 F. App'x at 848. In *Hershgordon,* the Third Circuit found that a plaintiff was not disabled under the ADA when his disability was a back injury that required surgery. 285 F. App'x at 847-49. The plaintiff's employer "only considered [the plaintiff] to be temporarily incapable of performing his job" which "is not enough to make [the employer] liable under the ADA." *Hershgordon,* 285 F. App'x at 848-49. As such, the court granted summary judgment "because [the employer] only regarded [the plaintiff's] injury as temporary. *Hershgordon,* 285 F. App'x at 849; *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) ("[I]mpairment of a short duration is not a disability covered by the ADA"); *McDonald v. Pa Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 96 (3d Cir. 1995). Here, the record does not reflect that The Times Leader or Raymo thought that he would be "incapable of performing his job" as a sports editor due to his neck surgery for any longer than it took him to have and recover from the surgery. *See Hershgordon,* 285 F. App'x, at 848. In fact, Raymo had returned to work to perform his job the day before he was terminated, demonstrating the temporary nature of his disability and his intent to continue his sports editor duties. (Doc. 88, ¶ 19; Doc. 95, ¶ 19). Therefore, the undisputed record does not support a finding that Raymo was regarded as having a disability as it pertains to his neck surgery.

Accordingly, the undisputed record before this Court demonstrates that Raymo was not rendered disabled by his neck surgery and summary judgment shall be granted to Defendant on the ADA discrimination claim.

2. <u>Retaliation</u>

At oral argument, counsel for Raymo averred that the only disability to be considered upon the retaliation claim was that related to Raymo's neck surgery. (Doc. 107). "The ADA retaliation provision, 42 U.S.C. 12203(a), states that '[n]o person shall discriminate against any induvial because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA].'" *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). A plaintiff must demonstrate "(1) [a] protected employee activity; (2) [an] adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 187 (3d Cir. 2003). "Unlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff had a reasonable good faith belief that he was entitled to request the reasonable accommodation he requested." *Payne v. Woods Services, Inc.,* 520 F. Supp. 3d 670, 680 (E.D. Pa. 2021) (quoting *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010)). If the plaintiff can establish a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets this minimal burden, the plaintiff "must point to some evidence, direct or circumstantial, from

which a factfinder could reasonably . . . disbelieve [defendants'] articulated legitimate reasons." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

At the outset, Raymo must demonstrate that he engaged in a protected employee activity. *See Shellenberger*, 318 F.3d at 187. A "protected activity under the ADA includes retaliation from an employee for requesting an accommodation." *Payne*, 520 F. Supp. 3d at 680 (internal quotations omitted). Raymo alleges that he was terminated from his position at The Times Leader because he requested and took FMLA leave. (Doc. 44, at 6). However, "FMLA leave is not a reasonable accommodation" and a plaintiff must "ma[ke] a request for a reasonable accommodation separate from his request for FMLA leave." *Payne*, 520 F. Supp. 3d at 680; *see also Rutt v. City of Reading, Pa.,* No. 13-4559, 2014 WL 5390428, at *4 (E.D. Pa. Oct. 22, 2014) (finding that "the ADA can complement FMLA leave . . . [by] require[ing] employers to make reasonable accommodation to employees returning from FMLA leave," but "a request for [or the taking of] FMLA leave is not a request for a reasonable accommodation"); *Vice v. Blue Cross & Blue Shield of Okla.*, 113 F. App'x 854, 857 (10th Cir. 2004) ("FMLA leave is not a reasonable accommodation under the ADA; rather, it is a right enforceable under a separate statutory provision."). Raymo made no other requests for reasonable accommodation for his neck surgery that were denied before or after his FMLA leave and there are no facts demonstrating that any request was made to complement his FMLA leave.[23] *See* (Doc. 88, ¶ 9, 10, 11, 25); (Doc. 95-2, at 421); (Doc. 95, ¶ 9, 10, 11, 25);

---

[23] Raymo denies that he "admit[ted] that he never requested [The Times Leader] to provide any accommodation[s]." (Doc. 88, ¶ 25; Doc. 95, ¶ 25). However, in his denial, Raymo only notes the accommodations received by him from Farkas regarding his visual impairment, which is a separate issue from any requests for accommodation due to his neck surgery. (Doc. 95, ¶25; Doc. 95-2, at 416).

*Payne,* 520 F. Supp. 3d at 680; *see also Rutt,* 2014 WL 5390428, at *4. Nothing in the record before the Court demonstrates that Raymo was engaged in a protected employee activity under the ADA. As such, Raymo has failed to demonstrate an issue of fact as to his retaliation claim for his neck surgery and the retaliation claim shall be dismissed on summary judgement.

In sum, Raymo has failed to allege a dispute of material facts as to his claims under the ADA. Defendant's motion for summary judgment regarding Raymo's claims for discrimination and retaliation under the ADA regarding both his glaucoma and his neck surgery shall be GRANTED. (Doc. 86).

### C. PHRA DISCRIMINATION AND RETALIATION

Raymo alleges the same issues under the PHRA as he advances under the ADA. Raymo's PHRA claims for discrimination and retaliation shall also be dismissed on summary judgment due to the reasons stated *supra.* The Court's "analysis of an ADA claim applies equally to a PHRA claim." *Taylor,* 184 F.3d at 306. "While the Pennsylvania courts are not bound in their interpretation of Pennsylvania law by federal interpretation of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts." *Kelly v. Drexel U.,* 94 F.3d 102, 105 (3d Cir. 1996) (internal citations omitted). Therefore, the Court finds that Raymo has failed to allege any issue of material fact as to his claims of discrimination and retaliation under the PHRA and Defendant's motion for summary judgment regarding Raymo's PHRA claims shall be GRANTED. (Doc. 86).

### D. FMLA RETALIATION

Finally, Raymo claims that he was retaliated against for taking FMLA leave when he was fired the day after he returned to work from taking FMLA leave for his neck surgery.

(Doc. 47, at 7). The primary purposes of the FMLA are to balance the demands of the workplace with the needs of families and to entitle employees to take reasonable leave for medical reasons. The FMLA endeavors to accomplish these purposes in a manner that accommodates the legitimate interests of employers. *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). The FMLA "entitles eligible employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including the onset of a 'serious health condition' in an employee's spouse, child, or parent." *DeCicco v. Mid-Atl. Healthcare, LLC,* 275 F. Supp. 3d 546, 560 (E.D. Pa. 2017) (quoting *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724 (2003) (citing 29 U.S.C. § 2612(a)(1)(C)). An employer is prohibited from taking action "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA (an "interference" claim), and may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA (a "retaliation" or "discrimination" claim). *Callison*, 430 F.3d at 119.

To adequately plead an FMLA retaliation claim, a plaintiff must establish a prima facie case for retaliation under the FMLA. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014). "Once [a plaintiff has] establishe[d] a prima facie case, the burden shifts to the defendant to provide evidence of a legitimate non-discriminatory reason for the adverse action." *Budhun*, 765 F.3d at 256 (quoting *McDonnell Douglas*, 411 U.S. at 802). Finally, "if the [defendant] meets this 'minimal burden,' [plaintiff] must then point to some evidence that the defendant's reasons for the adverse action are pretextual." *Budhun*, 765 F.3d at 256 (quoting *Lichtenstein v. U. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 302 (3d Cir. 2012))

Defendant submits that the undisputed record fails to demonstrate any issues of material fact to that should allow Raymo's claim to move survive summary judgment. (Doc.

- 18 -

86, at 13). Specifically, Defendant contends that Raymo requested FMLA leave after the decision to terminate his position was made, that Raymo stated in his deposition that he did not believe he was terminated because he took FMLA leave, and that the declining financial condition of The Times Leader was the sole reason for Raymo's termination. (Doc. 86, at 13-19). Raymo asserts that the timing of his termination was "unduly suggestive of retaliation" and that there is other "suggestive evidence" demonstrating a causal link between his termination and his taking of FMLA leave. (Doc. 95-1, at 11-16).

    1. <u>Prima Facie Case of FMLA Retaliation</u>

The FMLA prohibits an employer from retaliating against an employee because the employee exercised his rights under the FMLA or "oppos[ed] any practice made unlawful by" it. *Reifer v. Colonial Intermediate Unit 20*, 462 F.Supp.2d 621, 638 (M.D. Pa. 2006) (citing 29 C.F.R. § 825.220(c)). "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) [he] invoked [his] right to FMLA-qualifying leave; (2) [he] suffered an adverse employment decision; and (3) the adverse action was causally related to [his] invocation of rights." *Lichtenstein,* 691 F.3d at 301-02; *see also Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 509 (3d Cir. 2009).

Medical leave is an activity protected by the FMLA and is thus FMLA-qualifying leave. *Lichtenstein*, 691 F.3d at 307. "The Supreme Court has defined an adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits.'" *Clark v. Phila. Hous. Auth.,* 701 F. App'x 113, 117 (3d Cir. 2017) (quoting *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998)). An adverse employment action is one "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Langley v.*

*Merck & Co.*, 186 F. App'x 258, 260 (3d Cir. 2006) (internal citations omitted). On the other hand, "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." *Langley*, 186 F. App'x at 260 (internal citations omitted). "Generally, a plaintiff seeking to establish causation in the FMLA retaliation context needs to produce evidence of an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link between the protected activity and the allegedly retaliatory action." *Wert v. Pa. St. U.*, No. 4:19-CV-00155, 2021 WL 1721574, at *5 (citing *Budhun*, 765 F.3d at 258). The fact that an adverse employment action ensues after a protected activity "will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Krouse*, 126 F.3d at 503.

It is undisputed that Raymo "invoked [his] right to FMLA-qualifying leave" in that he was granted and took medical leave to receive neck surgery. (Doc. 88, ¶ 9, 11; Doc. 95 ¶ 9, 11); *see Lichtenstein*, 691 F.3d at 301-02, 307. It is also undisputed that Raymo suffered an adverse employment action in that he was terminated from his position with The Times Leader. (Doc. 88, ¶ 20; Doc. 95 ¶ 20); *see Langley*, 186 F. App'x at 260. However, the record fails to establish any disputed material fact related to Raymo fails to establish any causation between his FMLA leave and his termination, and in particular, the record does not contain an "unusually suggestive temporal proximity between" his June 20, 2018, request for FMLA leave and his October 10, 2018, termination. *See Wert*, 2021 WL 1721574, at *5.

Raymo requested FMLA leave from The Times Leader to undergo surgery to address a problem with his neck and his request was approved on June 20, 2018. (Doc. 88, ¶ 9, 11;

- 20 -

Doc. 95, ¶ 9, 11). On August 3, 2018, Raymo attended his last day of work before taking FMLA leave and returned to work on October 9, 2018, after his surgery and FMLA leave were over. (Doc. 47, at 4; Doc. 88, ¶ 19; Doc. 95, ¶ 19). Raymo was terminated from his position on October 10, 2018. (Doc. 88, ¶ 20; Doc. 95, ¶ 20). Although the date of his return to work and the date of his termination were just one day apart, the record reflects that the decision to terminate Raymo from his position occurred before he requested FMLA leave. (Doc. 88, ¶ 12, 15-16, 19; Doc. 95 ¶ 20; Doc. 86-3, at 412). Although the employment attorney was contacted on or around July 10, 2018, after Raymo had requested and been approved for FMLA leave, the record still establishes that the decision to terminate Raymo's position occurred *before* he requested FMLA leave. (Doc. 88, ¶ 15-16; Doc. 95 ¶ 16). As the undisputed record reflects that the decision to terminate Raymo occurred before he requested FMLA leave, he "cannot rely on the temporal proximity between these two events to defeat summary judgment." *See Wert*, 2021 WL 1721574, at *5.

### 2. Legitimate and Non-Discriminatory Reason

Assuming, *arguendo*, that Raymo had demonstrated causation through temporal proximity, Defendant has provided an unrefuted, legitimate, non-discriminatory reason as to Raymo's termination. Defendant contends that "[d]ue to financial difficulties that were and continue to be common to print newspapers, prior to Raymo requesting FMLA leave, The Times Leader had determined to eliminate a number of positions and to terminate the employment of the incumbents in those positions" including the position held by Raymo. (Doc. 88, ¶ 12-13).

Defendant presents an affidavit of Amy Kosch ("Kosch"), The Times Leader's Human Resources Director from March 2018 to June 2019, wherein she testifies that The Times

Leader was suffering from "financial difficulties" and that those difficulties were "common knowledge amongst its employees." (Doc. 86-3, at 412). Kosch described her personal observations regarding the hardships The Times Leader faced including "two rounds of position eliminations and reductions in force" and reducing its publishing days. (Doc. 86-3, at 412). Kosch states that "[w]hen [she] returned to work from vacation in June of 2018 [she] was given a list of employees whose positions had been selected for elimination and whose employment was to be terminated." (Doc. 86-3, at 412-13). The list included the Director of Marketing & Administration, the Arts & Entertainment Editor, and the Sports Editor, with Raymo holding the position of Sports Editor at the time. (Doc. 86-3, at 413). Kosch states that she was tasked with preparing severance packets and informing the employees that they had been terminated. (Doc. 86-3, at 413). Kosch explains the timeline of the events, stating that Raymo contacted her regarding FMLA leave to have surgery on his back "[s]hortly prior to the first RIF's position eliminations being announced to the affected employees." (Doc. 86-3, at 413). Kosch expressed her concern with "terminating [Raymo's] employment after he had requested FMLA leave" and met with an employment law attorney "to seek advice on how to handle [Raymo's] request for FMLA leave and the termination of his employment." (Doc. 86-3, at 413). Kosch states that The Times Leader made the decision "to delay elimination of [Raymo's] position and termination until after his surgery" based on the advice they received from the employment law attorney.[24] (Doc. 86-3, at 413). Thus, through the

---

[24] In her Declaration, Kristine Grady Derewicz ("Derewicz") states that she provided legal advice to Kosch as a licensed attorney and stated that she discussed "plans to implement a reduction in force at The Times Leader." (Doc. 86-3, at 449). Derewicz states that Raymo was "[a]mong the employees identified for lay-off" and that his situation was different as he had been approved for FMLA leave around the same time as the lay-off. (Doc. 86-3, at 449). Derewicz advised Kosch that "the FMLA did not restrict Civitas's ability to lay off [Raymo], as long as he would have been laid off had he been at work, not on leave, and that he was

affidavit of Kosch, Defendant has demonstrated a legitimate, non-discriminatory reason for terminating Raymo in that they were experiencing financial difficulties and had to terminate some positions within the paper.

### 3. Pretext for Discrimination

Once the moving party has demonstrated a legitimate, non-discriminatory reason, the non-moving party must present evidence "from which a factfinder could reasonable either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 324 (3d Cir. 2014). A "non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes, 32 F.3d at 765* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992); *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3d Cir. 1993) (brackets in original)).

Without identifying any particular portion or statement within the affidavit, Raymo contends that much of Kosch's affidavit is inadmissible hearsay. (Doc. 95-1, at 17-18). "[I]t is well established that 'only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment.'" *Damiano v. Scranton Sch. Dist.*, No. 3:13-2635, 2016

---

being treated in the same manner as similarly-situated individuals who were not taking FMLA leave." (Doc. 86-3, at 449). Derewicz also advised Defendant that it "was not legally restricted in its decision to wait and implement [Raymo's] lay-off when he returned to work after his leave of absence." (Doc. 86-3, at 449).

WL 3227254, at *3 (M.D. Pa. June 13, 2016) (citing *Countryside Oil Co., Inc v. Travelers Ins. Co.,* 928 F. Supp. 474, 482 (D.N.J. 1995). It follows that a hearsay statement may be considered at the motion for summary judgment stage if the statement is "capable of admission at trial." *See Shelton v. U. of Med. & Dentistry of N.J.,* 223 F.3d 220, 223, n.2 (3d Cir. 2000). "[H]earsay in an affidavit made by someone other than the affiant can be considered on summary judgment, if it appears that the declarant would be available at trial to provide direct testimony on the matter." *Damiano,* 2016 WL 3227254, at *3; *see also Styer v. Frito-Lay, Inc.,* No. 1:13-CV-833, 2015 WL 999122, at *2 (M.D. Pa. Mar. 6, 2015); *McCann v. Astrue,* 293 F. App'x 848, 851 (3d Cir. 2008) (considering testimony on summary judgment from a non-party who testified as to what a third party told him); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1542 (3d Cir.1990) ("hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial.") (internal quotations omitted); *Williams v. Borough of W. Chester,* 891 F.2d 458, 465 n. 12 (3d Cir. 1989) (holding the same); *Kenawell v. DuBois Bus. Coll., Inc.,* No. 3:2005–429, 2008 WL 768139, *8 (W.D. Pa. Mar. 20, 2008) (noting that "the presence of hearsay can be cured at the time of trial should [the third party declarant] testify as to her personal knowledge of the documents").

In her affidavit, Kosch provides personal knowledge regarding the financial hardships The Times Leader experienced due to her position as the Human Resources Director, her observations of two rounds of position eliminations, and her observations in the reductions in force at The Times Leader during her year and three-month tenure with the company. (Doc. 86-3, at 413). Kosch states that she prepared severance packets for the employees who were to be terminated and provides those packets in her affidavit. (Doc. 86-3, at 413, 416-

444). Inherent in her position as Human Resources Director, Kosch was personally aware of who was employed at the company. (Doc. 86-3, at 412). Therefore, she would be able to testify at trial as to who was provided severance packages, who was fired, and that Raymo was one of many who were terminated from their positions in a similar fashion. (Doc. 86-3, at 412-14). The firing of multiple people under the same conditions is enough to demonstrate a non-discriminatory reason as to why Raymo was fired. *Cf. Parker v. Verizon Pa., Inc*, 309 F. App'x 551, 556 (3d Cir. 2009) (noting that a pretext for discrimination includes a company treating similarly situated persons that have not taken FMLA leave more favorably). As for Kosch's conversations with the Kristine Derewicz, Derewicz provided a declaration demonstrating her availability to provide direct testimony on the matter. (Doc. 86-3, at 449). Kosch's testimony regarding who was fired, the severance packets that were prepared, and her conversation with Derewicz are enough to demonstrate a non-discriminatory reason as to why Raymo was fired in that others who had not taken FMLA leave were fired as well. *Cf. Parker*, 309 F. App'x at 556. As these statements are capable of admission at trial because Kosch and Derewicz would be available for testimony at trial, they may be considered in ruling on a motion for summary judgment. *See Styer*, 2015 WL 999122, at *3.

Other than disputing the admissibility of the affidavits, Raymo does not point to any other evidence in the record to show that Defendant's proffered reason is a pretext for discrimination. (Doc. 95-1, at 17-18). To demonstrate that Defendant's justification for his termination was pretextual, Raymo "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve the employer's articulated legitimate reasons." *Fuentes*, 32 F.3d at 764. Raymo simply contends that he was not terminated in the

same fashion as others who were also terminated around the same time. (Doc. 95, ¶ 40, 41, 42; Doc. 95-1, at 16).

     Raymo points to the declaration of Derewicz wherein she states that "the FMLA did not restrict Civitas's ability to lay off Mr. Raymo, as long as he would have been laid off had he been at work, not on leave, and that he was being treated in the same manner as similarly-situated individuals who were not taking FMLA leave."[25] (Doc. 86-3, at 449). Derewicz also states that Defendant was not restricted in its decision to terminated Raymo's employment after he returned from FMLA leave. (Doc. 86-3, at 449). It does not follow, as Raymo contends, that Defendant had to terminate Raymo's employment at the same time. (Doc. 86-3, at 449; Doc. 95-1, at 16). The advice of Derewicz stated that Defendant was *not restricted* to do so but did not state that it *could not* do so. (Doc. 86-3, at 449). Additionally, the testimony from Kosch demonstrates why Defendant waited to terminate Raymo's employment. (Doc. 86-3, at 412-14).

     Raymo also points to the declaration of his supervisor, Farkas. (Doc. 95-1, at 16). Raymo notes that Farkas was not aware nor consulted with about Raymo's termination, and did not "select Mr. Raymo's position for elimination." (Doc. 95-2, at 416). However, such evidence does not point to a discriminatory animus by Defendant. Additionally, Farkas explains that he does "not know why Mr. Raymo was terminated from his employment [but that he] was not there at the time because [he] had voluntarily resigned [his] position at [The Times Leader] to pursue other opportunities." (Doc. 95-2, at 416). There is no genuine issue

---

[25] Additionally, Raymo states that he had not been offered adequate severance but fails to produce any evidence demonstrating an inconsistency in the severance he received and the severance others who were terminated at a similar time received. (Doc. 95-1, at 16).

of material fact as to the pretextual nature of Defendant's non-discriminatory reason, as Raymo does not point to any evidence that invalidates Kosch's reasoning and only avers that Defendant lacks certain documents. (Doc. 95, ¶ 25-32; Doc. 95-1, at 14); *see Velentzas,* 2010 WL 3896192, *7 (a "nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.") (quoting *Goode,* 241 F. App'x at 869). As such, Raymo has failed to demonstrate that Defendant's non-discriminatory reason was a mere pretext for discrimination.

Because Raymo has failed to demonstrate that his termination was causally related to his taking of FMLA leave, Defendant provides a legitimate and non-discriminatory reason as to why Raymo was terminated, and Raymo fails to present evidence that Defendant's non-discriminatory reason is a pretext for discrimination, there is no disputed issue of material fact as to his FMLA retaliation claim. As such, Defendant's motion for summary judgment as to Raymo's FMLA retaliation claim shall be GRANTED. (Doc. 86).

### III.  MOTION FOR RULE 11 SANCTIONS

Civitas moves for sanctions against Raymo pursuant to Rule 11 of the Federal Rules of Civil Procedure on the grounds that Raymo's prior Rule 11 motion for sanctions was unreasonable and improper. (Doc. 90; Doc. 91, at 5; Doc. 73). Specifically, Civitas alleges that Raymo's motion for sanctions was unreasonable as Rule 11 does not apply to discovery motions, Raymo's motion for sanctions did not meet the stringent test for Rule 11 sanctions, and that Defendant should be awarded attorneys' fees and costs in opposing Raymo's motion for sanctions because there was no reasonable basis for the motion and Rule 11 permits the Court to impose attorneys' fees on the party prevailing in a Rule 11 motion. (Doc. 91, at 4-11). Raymo opposes the motion for sanctions arguing that he was reasonable in filing the

motion for sanctions because Rule 11 applies to motions *in limine* filed in bad faith. (Doc. 93-1, at 3-5).

> Rule 11 of the Federal Rules of Civil Procedure states, in pertinent part:
>
> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper-whether by signing, filing, submitting, or later advocating it-an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. . . .
>
> Fed. R. Civ. P. 11(b).

If a party or its counsel violates this provision, the opposing party may move for the imposition of sanctions, which may include an order directing payment to the movant of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c). The purpose of Rule 11 is to correct litigation abuse. *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir. 1987). "Fed.R.Civ.P.11 provides for the imposition of sanctions against counsel . . . if the court finds that pleadings or other papers signed by the counsel . . . are 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *See Baxter v. A.T. & T. Comm.*, No. 88-471 (CFS), 1989 WL 121058, at *2 (D.N.J. Sept. 5, 1989) (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity*

*Comm'n*, 434 U.S. 412, 421 (1978); *see also Flanagan v. Warden, U.S. Penitentiary*, 784 F. Supp. 178, 182 (M.D. Pa. 1992); *Doering v. Union Cty. Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988) ("This Court and others have interpreted [the] language [of Rule 11] to prescribe sanctions, including fees, only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous.") (citations omitted).

Further, "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir. 1991) (citing *Bus. Guides v. Chromatic Commc'ns Enter., Inc.,* 498 U.S. 533, 546–47 (1991)). Reasonableness in the context of Rule 11 is "an objective knowledge or belief at the time of the filing of the challenged paper that the claim was well-grounded in law and fact." *Ford,* 930 F.2d at 289. "The wisdom of hindsight is to be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989). Nonetheless, "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 146 n.28 (3d Cir. 2009) (citation omitted); *see also Marlowe Pat. Holdings v. Ford Motor Co.,* No. CIV.A. 11-7044 PGS, 2013 WL 6383122, at *2 (D.N.J. Dec. 5, 2013) ("[I]mposing sanctions is an extraordinary remedy to be exercised with restraint.").

First, Defendant argues that Raymo's motion for sanctions was improper because Rule 11 does not apply to discovery motions. (Doc. 91, at 4). In response Raymo contends that Rule 11 sanctions are permitted when a motion *in limine* is filed in bad faith. (Doc. 93-1, at 3). Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). Although the Court found that

Raymo's motion for sanctions was improper because it was related to discovery matters, exceptional circumstances do not exist that warrant sanctions. (*See* Doc. 80, at 6). Defendant filed its motion as a "Motion *in Limine* or, in the Alternative, for an Order Compelling Discover and Awarding Attorneys' Fees." (Doc. 62, at 3). Although the crux of Defendant's argument was related to discovery, it was reasonable for Raymo to believe that Rule 11 may apply because one of the components of Defendant's motion was a "Motion *in Limine*." (Doc. 62). Additionally, Defendant structured its motion as a request for preclusion at trial at the outset, or in the alternative, an order compelling discovery. (Doc. 62, at 3, 6). Thus, it was reasonable for Raymo to argue that Rule 11 sanctions may apply to the motion as Defendant's motion was filed as a motion *in limine* or in the alternative, a discovery request and Rule 11 motions are proper for motions *in limine*. *See Giorgini v. Ford Motor Co.*, No. 06-0968, 2008 WL 859230, at *13 (E.D. Pa. Mar. 28, 2008) (assessing the arguments within a motion for sanctions under Rule 11 in response to a motion *in limine*).

Second, Defendant argues that the discovery it was seeking was permissible under Rule 26(a)(1)(A) and thus Raymo's motion for sanctions was unwarranted. (Doc. 91, at 5-7). Raymo contends that he alleged Defendant's motion "was not supported by law and should not have been brought at this junction of the proceedings" and "was brought in bad faith." (Doc. 93-1, at 3-4). Again, the Court does not find that exceptional circumstances exist to impose sanctions. *See Doering,* 857 F.2d at 194; *Gaiardo,* 835 F.2d. at 482. Raymo's motion for sanctions demonstrated "an objective knowledge or belief . . . that [his] claim was well-grounded in law and fact" as he believed that Defendant's motion, which he perceived as a motion *in limine*, was improper and brought in bad faith. *Ford*, 930 F.2d at 289. The Court does not find that Raymo's filing of the motion for sanctions was "'patently unmeritorious or

'frivolous' enough to justify sanctions" or that "exceptional circumstances" merit sanctions in this case. *See BNB Hana Bank Nat. Ass'n v. Red Mansion LLC*, No. 3:14-CV-01664, 2015 WL 9480030, at *3 (M.D. Pa. Dec. 29, 2015); *see also Doering,* 857 F.2d at 194; *Gaiardo,* 835 F.2d. at 482.

Additionally, the Court does not find that Defendant should be given an award of attorneys' fees for prevailing in Raymo's motion for sanctions. "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred in the motion." Fed. R. Civ. P. 11(c). Rule 11's "primary purpose is not 'wholesale fee shifting but [rather] correction of litigation abuse." *Doering,* 857 F.2d at 194. As the Court finds, *supra*, that Raymo was not "frivolous, legally unreasonable, or without factual foundation" in filing his motion for sanctions, attorneys' fees are not warranted in this case. *See Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986). Thus, the Court will **DENY** Defendant's motion for sanctions. (Doc. 90).

## IV.   CONCLUSION

Based on the foregoing, Civitas's Motion for Summary Judgment is **GRANTED**. (Doc. 86). Judgment shall be entered in Defendant Civitas's favor and against Plaintiff Raymo. In addition, Civitas's Motion for Sanctions is **DENIED**. (Doc. 90). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**BY THE COURT:**

Dated: December 31, 2021          *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**